Priority
Send
Enter
Closed _____
JS-5/JS-6 _____
JS-2/JS-3 _____
Scan Only_____

FILED
CLERK, U.S. DISTRICT COURT

JUN - 5 2001
6 - 5 - 2001

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| ELLEN L. BATZEL, | ) | CV 00-9590 SVW (AJWx) |
| | ) | |
| Plaintiff, | ) | ORDER DENYING MOTION TO DISMISS |
| | ) | FOR LACK OF PERSONAL |
| v. | ) | JURISDICTION; DENYING MOTION TO |
| | ) | DISMISS ON FORUM NON-CONVENIENS |
| ROBERT SMITH, et al., | ) | GROUNDS; ORDERING RE-BRIEFING ON |
| | ) | THE PRIMA FACIE DEFAMATION CASE |
| Defendants. | ) | |
| | ) | |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

Defendants Museum Security Network ("MSN") and Ton Cremers,

the creator and operator of MSN, have moved to dismiss Plaintiff's

complaint (1) for lack of personal jurisdiction and (2) on grounds of

forum non-conveniens.  In addition, Defendants have moved to strike

Plaintiff's complaint under § 425.16 of the California Code of Civil

Procedure, the so-called anti-SLAPP statute.  For the reasons

discussed below, the Court denies Defendants' motion to dismiss for

lack of personal jurisdiction and on the basis of forum non-

conveniens.  However, it reserves ruling on Defendants' motion to

strike Plaintiff's complaint under Cal. Civ. Proc. Code § 425.16

until after further briefing, as ordered herein, is completed by the

parties.

79

ED ON ICMS
JUN - 6 2001
CV

# I.      BACKGROUND

MSN is an internet website that publishes newsletters concerning art and museum security issues.  It is operated out of the Netherlands.  Ton Cremers is the creator and sole operator of MSN. Cremers both receives submissions from others and composes his own content for the MSN newsletter.  Individuals can subscribe to the newsletter via the MSN website.  Cremers maintains a subscriber list to whom he e-mails newsletters and invitations to view the website.

Defendant Bob Smith painted Plaintiff Ellen Batzel's house in North Carolina.  Batzel is an entertainment lawyer with art industry business and a number of Jewish clients in California.  According to Plaintiff's complaint, Smith asked Batzel to take a script to her clients to review.  When Batzel declined Smith's request, Smith allegedly became angry with Plaintiff.

Thereafter, Smith located the MSN website and sent an e-mail to Cremers.  The e-mail indicated that he, Smith, had been working in the home of a lawyer who claimed to be the granddaughter of Heinrich Himler and who bragged about having an art collection stolen from Jewish families by the Nazis.  Cremers published the e-mail and related updates on five occasions in September of 1999, allegedly without investigating the veracity of the information received from Smith.  The tenor of subsequent publications of this information suggested that MSN itself had investigated the allegations.

1    Batzel learned of the publication of this information from an

2    anonymous emailer on January 4, 2000.  She contacted MSN and

3    defendant Mosler, Inc., MSN's corporate sponsor, and requested a

4    retraction.  None was published.  Cremers did not advise people who

5    inquired about the Batzel information that the allegations were

6    false.  As a result of the publication of Smith's story, Batzel

7    alleges that she lost several prominent clients in California and

8    also became the subject of an investigation by the North Carolina

9    Bar.

10

11   **II.     PERSONAL JURISDICTION**

12    California law permits the exercise of personal jurisdiction

13   to the full extent permitted by due process.  See Cal. Civ. Code §

14   410.10.  Whether the exercise of personal jurisdiction over

15   Defendants MSN and Cremers (hereinafter the "Defendants" or

16   "MSN/Cremers") is proper depends on whether Plaintiff has alleged

17   sufficient "minimum contacts" between MSN/Cremers and the state of

18   California for purposes of general or specific jurisdiction.  See

19   International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).  In

20   this case, the Court concludes that MSN/Cremers' contacts with

21   California are sufficient for purposes of specific jurisdiction.

22   Therefore, it need not decide whether general jurisdiction also

23   exists.

24

25

Specific jurisdiction exists if (1) the nonresident defendant has performed some act or consummated some transaction within the forum or otherwise purposefully availed himself of the privileges of conducting activities in the forum, (2) the claim arises out of or results from the defendant's forum-related activities, and (3) the exercise of jurisdiction is reasonable.  See Cybersell, Inc. v. Cybersell, Inc., 130 F.3d 414, 416 (9th Cir. 1997).  For purposes of this jurisdictional analysis, the Court must accept as true the allegations contained in Plaintiffs complaint.  See Bancroft & Masters, Inc. v. Augusta Nat'l Inc., 223 F.3d 1082, 1087 (9th Cir. 2000).

### A.   Purposeful Availment

The Defendants' contacts with California evince an intent to purposefully avail themselves of the benefits and privileges of conducting business in California.  Although the MSN website is operated from Holland, the connections to California are not merely "random, fortuitous, or attenuated."  Burger King Corp. v. Rudzewicz, 471 U.S. 462, 478-79 (1985).  According to Plaintiff's complaint, since July of 1997, Cremers has transmitted his newsletter via the internet to California multiple times per week.  In addition, in July of 1999, MSN/Cremers entered into a corporate sponsorship agreement with Mosler, Inc., a museum security company based in Anaheim, California.

4

Moreover, several California residents, as well as a number of California organizations and museums, were subscribers to Cremers' mailing list during the time the allegedly defamatory email was published.  These California subscribers included the following: the Los Angeles County Museum of Art, the Getty Museum, Pacific Bell, the Autry Museum of Western Heritage, the California Academy of Sciences, the Nixon Library, the University of Southern California, the City of San Bernardino, the J.P. Getty Trust, and the Los Angeles Police Department Art Theft Detail.  Significantly, in 1999, Cremers traveled to California to a conference held at the Getty Museum.  At this conference he promoted the MSN website, solicited subscribers for the MSN newsletter, and sought corporate sponsorship of the website.

Finally, Cremers has also republished several articles in his newsletters and website from California newspapers, including the Los Angeles Times, the San Francisco Chronicle, and the San Jose Mercury & Northridge Daily.  As Plaintiff notes, if Cremers had complied with the copyright laws, he would have had to enter into copyright licensing agreements with those California newspapers.

These various contacts with California demonstrate that the Defendants purposefully availed themselves of numerous opportunities to conduct significant activities in the state.  This is not a case where a defendant operated a strictly "passive" website, in which the only contacts with the forum state consisted of mere viewings of the

website's content by those surfing the internet.  See, e.g.,
Cybersell, Inc., 130 F.3d at 419; CFOs To Go Inc. v. CFO 2 Go Inc.,
1998 WL 320821, at *3 (N.D. Cal. 1998); Bensusan Restaurant Corp. v.
King, 937 F. Supp 295, 299-300 (S.D.N.Y. 1996); aff'd 126 F.3d 25 (2d
Cir. 1997).  Here, there was more.  In fact, this case mirrors
Nicosia v. DeRooy, 72 F. Supp. 2d 1093 (N.D. Cal. 1999), and
Blumenthal v. Drudge, 992 F. Supp. 44 (D.D.C. 1998).

In Nicosia, the defendant published disparaging statements
about the plaintiff on her website.  The defendant then sent one
hundred e-mails to various individuals inviting them to view her
website.  Eleven of these e-mails were sent to people in California.
The e-mails were sent to individuals who would be particularly
interested in their content.  The Nicosia court found that such
invitation e-mails were akin to sending newspapers to the forum state
and constituted the contacts necessary to exercise personal
jurisdiction.[1]  See 72 F. Supp. 2d at 1098-99.

In Blumenthal, the defendant published a website gossip
column known as the Drudge Report.  He had a list of email
subscribers to whom he e-mailed new editions of the Drudge Report.
He printed disparaging remarks about Plaintiff in this column.
Defendant had also traveled to the forum state on a couple of

---

1.   In so holding, the court relied on Gordy v. Daily News,
L.P., 95 F.3d 829 (9th Cir. 1996), in which only .0017% of the
newspapers - 13 to 18 copies - was distributed in the state of
California.

occasions.  On one of these visits, he promoted the Drudge Report.

He also solicited support from individuals in the forum state and

received gossip from those in the forum.  The court in <u>Blumenthal</u>

accordingly found that these contacts with the forum were sufficient

to exercise jurisdiction over the defendant.  <u>See</u> 992 F. Supp. at 56-

57.

The similarities between this case and both <u>Nicosia</u> and

<u>Blumenthal</u> are striking.  Cremers traveled to California both to

promote the MSN website and to solicit money at the Getty Museum in

1999.  He re-published the content of several California newspapers.

He had numerous California e-mail subscribers, including several

prominent California institutions such as the Los Angeles County

Museum of Art, Pacific Bell, and the University of Southern

California, to whom he regularly sent invitations to view the

newsletter.  These subscribers specifically had to sign up through

the MSN website and consisted of organizations and individuals with a

unique interest in art.  Thus, the Defendants' activities in

California clearly rose to the level of purposeful availment.

B.   **Relation Between Plaintiff's Claim and Defendants'**
     **Contacts**

To determine whether a claim arises out of forum-related

activities, courts apply a "but for" test.  <u>Ziegler v. Indian River</u>

<u>County</u>, 64 F.3d 470, 474 (9th Cir. 1995).  Here, there is no doubt

that but for the publication of Smith's accusations on MSN ~ which

were read by California organizations and individuals - Plaintiff
would not have been injured as she claims in her complaint.

### C.   Reasonableness Of Exercising Personal Jurisdiction

The bare existence of minimum contacts is not sufficient to
allow a court to exercise personal jurisdiction over a defendant.
The assertion of jurisdiction must also be reasonable, that is, it
must comport with traditional notions of "fair play and substantial
justice." International Shoe, 326 U.S. at 326.  Under the Supreme
Court's decision in Burger King, 471 U.S. at 476-77, the burden is on
the defendant to demonstrate unreasonableness, which requires the
defendant to put on a "compelling case."  The Defendants have made no
such compelling showing here.

When assessing the reasonableness of exerting jurisdiction
over a defendant, courts consider a variety of factors: (1) the
extent of the defendant's purposeful interjection into the forum
state, (2) the burden on the defendant in defending in the forum, (3)
the extent of the conflict with the sovereignty of the defendant's
state, (4) the forum state's interest in adjudicating the dispute,
(5) the most efficient judicial resolution of the controversy, (6)
the importance of the forum to the plaintiff's interest in convenient
and effective relief, and (7) the existence of an alternative forum.
See id.  Here, the reasonableness analysis tips easily in Plaintiff's
favor.

8

First, given the extent of MSN/Cremers' contacts with California generally, and with the Los Angeles art world in particular, there is no question that Cremers purposefully interjected himself in this state.  Second, the burden of litigating in California is eased by the fact that Cremers has secured the able representation of a prestigious Los Angeles law firm.  In addition, Cremers' facility in communicating via the internet will surely help reduce some of the travel that might otherwise be required of a defendant residing outside the United States.

With regard to the third Burger King factor, the exercise of jurisdiction here would be no affront to Dutch sovereignty.  The Defendants allegedly disparaged an American citizen living in the United States and did so largely to American institutions and individuals located in the United States.  Moreover, the MSN site is transmitted in the English language, not Dutch.  The mere fact that Cremers lives and operates his website in Holland does not, by itself, make exercise of jurisdiction by this Court unreasonable.

Indeed, this Court has a greater interest in resolving the present dispute given that (1) a California resident was injured, (2) a significant delay would certainly result if litigation in Holland were initiated, (3) the Court has already become familiar with the facts of the case, and (4) the Court has already adjudicated several substantial motions in connection with this case.  For these same reasons, this Court could achieve the most efficient resolution of

1  Plaintiff's complaint and is best positioned to provide the most
2  effective and convenient relief.
3      Finally, the Defendants have tendered no evidence indicating
4  the existence of a viable, alternative forum in the Netherlands for
5  resolving this dispute.  In fact, they have represented to the Court
6  that California law will apply to this litigation.  Thus, even if a
7  Dutch court were available to adjudicate this matter, it would have
8  to interpret California law.  This fact alone militates heavily in
9  favor of this Court's assertion of jurisdiction.

                        *******************

11     In sum, the exercise of personal jurisdiction over
12  MSN/Cremers is proper because (1) the Defendants purposefully availed
13  themselves of the benefits and privileges of transacting business in
14  California, (2) Plaintiff's alleged injury arose out of that
15  purposeful availment, and (3) the exercise of such jurisdiction is
16  not unreasonable.  Thus, the Defendants' motion to dismiss for lack
17  of personal jurisdiction is denied.

18

19  **III.    FORUM NON-CONVENIENS**

20     A forum non-conveniens determination is committed to the
21  sound discretion of the district court.  See Gemini Capital Group,
22  Inc. v. Yap Fishing Corp., 150 F.3d 1088, 1091 (9th Cir. 1998). In
23  deciding whether to dismiss an action on forum non-conveniens
24  grounds, the Court must examine (1) whether an adequate alternative

25

forum exists, and (2) whether the balance of private and public interest factors favors dismissal.  See Piper Aircraft Co. v. Reyno, 454 U.S. 235, 254 n.22 (1981); Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 507-09 (1947); Ceramic Corp. of America v. Inka Maritime Corp., 1 F.3d 947, 949 (9th Cir. 1993); Lockman Found. v. Evangelical Alliance Mission, 930 F.2d 764, 767 (9th Cir. 1991).  In this case, the Defendants have failed to carry their heavy burden of proving the existence of an adequate alternative forum.  Moreover, the balance of public and private interest factors does not militate in favor of dismissal.

### A.   Adequate Alternative Forum

"The defendant bears the burden of proving the existence of an adequate alternative forum."  Cheng v. Boeing Co., 708 F.2d 1406, 1411 (9th Cir. 1983).  The Supreme Court has held that, where the plaintiff is a United States citizen, the defendant must satisfy a heavy burden of proof because "a plaintiff's choice of forum is entitled to greater deference when the plaintiff has chosen the home forum."  Piper Aircraft, 454 U.S. at 256 (citation omitted).

As discussed above in connection with the Court's personal jurisdiction analysis, the Defendants have failed to establish the existence of an adequate alternative forum in Holland to adjudicate this dispute.  Given the heavy deference accorded to Plaintiff's choice of California as the forum state, there is no reason to look to other jurisdictions, much less to a foreign country, in search of

a more appropriate legal forum.  For this reason alone, the
Defendant's forum non-conveniens claim fails.

**B.   The Balance of Public and Private Factors**

Furthermore, the balance of private and public interest
factors favors Plaintiff, not the Defendants.  Ordinarily, a
plaintiff's choice of forum will not be disturbed unless the "private
interest" and the "public interest" factors strongly favor trial in a
foreign jurisdiction.  Gulf Oil, 330 U.S. at 509.

**1.   *The Private Interest Factors***

Courts consider the following private interest factors: (1)
the residence of the parties and the witnesses; (2) the forum's
convenience to the litigants; (3) access to physical evidence and
other sources of proof; (4) whether unwilling witnesses can be
compelled to testify; (5) the cost of bringing witnesses to trial;
(6) the enforceability of the judgment; and (7) "all other practical
problems that make trial of a case easy, expeditious and
inexpensive."  Id. at 508.  This Court may look to any or all of the
above factors which are relevant to the case before it, giving
appropriate weight to each.  See id.

Here, Cremers argues that he would be inconvenienced by
having to litigate in California since he resides in Holland.
Apparently, Cremers is currently unemployed with no income other than
Dutch unemployment benefits.  He also claims that he rarely travels
to the United States or California.  As Plaintiff correctly points

out, however, Cremers has secured excellent representation in the state of California despite his meager income.  Moreover, it is only appropriate that Cremers be required to defend his website activities here, given that he has traveled to the United States and California on earlier occasions in order to promote his website.

Additionally, access to witnesses and evidence is not hindered by this Court's retention of the instant lawsuit.  There are very few witnesses in Holland, and the witnesses in North Carolina have already been deposed.  Moreover, Smith himself, who lives in Virginia, has conceded that he is subject to this Court's jurisdiction.  On the other hand, as Plaintiff points out, there are many individuals in California who can testify as to the effect that the publication of Smith's story had on Plaintiff.  Furthermore, the various gallery owners who, according to Plaintiff, sold her the paintings in question are also here in California.  On balance, therefore, the private interest factors do not support dismissal of Plaintiff's complaint.

### 2.   *The Public Interest Factors*

As for the public interest factors, courts may consider the following: (1) local interest in the lawsuit; (2) the court's familiarity with governing law; (3) the burden on local courts and juries; (4) congestion in the courts; and (5) the costs of resolving a dispute unrelated to the forum.  See Piper Aircraft, 454 U.S. at 259-61; Gulf Oil, 330 U.S. at 508-09.  As with the private factors,

the public interest factors also weigh in favor of adjudicating this action in California.

First and foremost, Cremers agrees that California law applies to this case and, in fact, invokes it in his motion to strike under California's anti-SLAPP statute.  This fact, by itself, strongly favors Plaintiff's position.  Moreover, the Court notes that both MSN/Cremers and Plaintiff have substantial contacts in California and a great deal of the alleged injury occurred here.  In short, California has the greater interest in resolving this dispute.

*******************

In sum, the Court concludes that it would not be unduly burdensome for the Defendants to litigate the case in California. Defendants have made no showing of an adequate alternative forum, and the various public and private interest factors counsel against the dismissal of Plaintiff's complaint.  Accordingly, the Court denies MSN/Cremers' motion to dismiss on forum non-conveniens grounds.


**IV.     DEFENDANT'S MOTION TO STRIKE UNDER THE ANTI-SLAPP STATUTE**

Ruling on a § 425.16 motion to strike a complaint requires a two-step approach.  First, the trial court must determine if the defense has met its burden of showing that the plaintiff's lawsuit arises out of the defendant's constitutionally protected actions. See Wilcox v. Superior Court, 33 Cal. Rptr. 2d 446, 452-53 (Cal. Ct. App. 1994).  If the court finds in favor of the defense on that

issue, the burden then shifts to the plaintiff to establish "a probability that the plaintiff will prevail on the claim." Cal. Civ. Proc. Code § 425.16(b)(1); Metabolife Inc v. Wornick, 72 F. Supp. 2d 1160, 1165-66 (S.D. Cal. 1999).

The second step in this two-tiered inquiry means that a plaintiff must present evidence showing it would establish a prima facie case at trial. See Evans v. Unkow, 45 Cal. Rptr. 2d 624, 627-28 (Cal. Ct. App. 1995). Plaintiff must make this showing with admissible evidence. See id. at 628-29. In other words, plaintiff must produce evidence which, if presented at trial, would withstand motions for a nonsuit or directed verdict. See Wilcox, 33 Cal. Rptr. 2d at 454-55. A plaintiff may not rely upon the allegations in its complaint to make the required evidentiary showing. See Church of Scientology v. Wollersheim, 49 Cal. Rptr. 2d 620, 656 (Cal. Ct. App. 1996).

### A.   Defendants' Constitutionally Protected Actions

Under the anti-SLAPP statute, any suit which arises from a person's actions done "in furtherance of [the person's] right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike[.]" Cal. Civ. Proc. Code § 425.16(b)(1). Four types of activities are covered by the anti-SLAPP statute. See id. § 425.16(e). Here, MSN/Cremers' conduct qualifies either as (i) "any written or oral statement or writing made in a place open to the

public or a public forum in connection with an issue of public

interest," or (ii) "any other conduct in furtherance of the exercise

of . . . the constitutional right of free speech in connection with a

public issue or an issue of public interest."  Id. § 425.16(e)(3)-

(4).  Neither party contends that the MSN site is not a "place open

to the public" or a "public forum," and Plaintiff concedes that

information related to stolen Nazi art touches upon public matters of

national and international concern.  Thus, the only remaining

question is whether Plaintiff has satisfied her burden of producing

sufficient evidence to establish a prima facie case of defamation.

### B.   Plaintiff's Probability Of Success

The Defendants contend that Plaintiff has failed to establish

a probability of success because (1) the Telecommunications Act of

1996 (the "Act") preempts Plaintiff's defamation action, and (2)

Plaintiff's evidence does not support a prima facie case of

defamation.  As discussed below, Defendants' first contention is

without merit, and their second one cannot be resolved without

further briefing by the parties.

### 1.   *Preemption under the Telecommunications Act*

The Telecommunications Act does not preempt Plaintiff's

action because MSN/Cremers is not an internet service provider within

the meaning of the Act.  The Act provides that "[n]o provider or user

of an interactive computer service shall be treated as the publisher

or speaker of any information provided by another information content

provider." 47 U.S.C. § 230(c)(1).  The term "interactive computer service" means "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet and such systems operated or services offered by libraries or educational institutions."  Id. § 230(f)(2). The phrase "information content provider," in turn, means "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service."  Id. §230(f)(3).

Although several cases have held that, by virtue of the Act, internet service providers cannot be sued for defamation, none are applicable here because, unlike MSN/Cremers, the qualifying entities were true internet service providers, like America Online, that provided individuals with access to the internet.  See, e.g., Ben Ezra Weinstein v. America Online, 206 F.3d 980 (10th Cir. 2000); Zeran v. America Online, 129 F.3d 327 (4th Cir 1997); Lockheed Martin Corp. v. Network Solutions, 985 F. Supp. 949 (C.D. Cal. 1997); see also Kathleen R v. City of Livermore, 104 Cal. Rptr. 2d 772, 776-77 (Cal. Ct. App. 2001) (library which connected multiple users to the internet).  MSN, in contrast, is clearly not an internet service provider, as it has no capability to provide internet access.  To the contrary, it is plainly an "information content provider" within the

meaning of the Act.  Thus, the Defendants' preemption argument is without merit.

### 2.    *Prima Facie Defamation Case*

Under the current briefing before the Court, it cannot be adequately determined whether Plaintiff has established a prima facie case of defamation.  The central issue in every defamation action is whether the plaintiff is a public or private figure because the elements a plaintiff must prove to succeed differ depending on the plaintiff's public or private status.  See Gertz v. Robert Welch, Inc., 418 U.S. 323, 347 (1974); Curtis Publishing Co. v. Butts, 388 U.S. 130, 163 (1967); New York Times v. Sullivan, 376 U.S. 254, 279-80 (1964).  In this case, the parties disagree as to whether Plaintiff is a public or private figure and, as a result, rely on divergent legal standards in their briefs.  Thus, before this Court can decide whether Plaintiff has established a prima facie case, additional briefing will be required.

To facilitate that briefing, the Court makes the following legal conclusions.  See Khawar v. Globe Int'l, Inc., 965 P.2d 696, 701 (Cal. 1998) (whether defamation plaintiff is public or private figure is question of law for trial court to decide).  First, contrary to the Defendants' claims, Plaintiff is not a public figure. Individuals may be either a public figure for general or for limited purposes.  See id. at 702.  A person may be a public figure for all purposes and in all contexts where he has achieved "pervasive fame or

notoriety." Gertz, 418 U.S. at 351.  Plaintiff has not attained such

pervasive fame or notoriety and, thus, is not an all-purpose public

figure.

Nor is Plaintiff a public figure for limited purposes.  A

person becomes a limited-purpose public figure when he voluntarily

injects himself into a public controversy.  See Khawar, 965 P.2d at

702 (observing that for a private person to be considered a public

figure he must have purposefully injected himself into a public

controversy, thereby inviting criticism, or have acquired substantial

media access in relation to the controversy at issue).  To determine

whether a person's conduct rises to "voluntary injection," the Court

looks to "the nature and extent of an individual's participation in

the particular controversy giving rise to the defamation." Gertz,

418 U.S. at 351-52.

In this case, Plaintiff has not voluntarily injected herself

into the controversy that gave rise to the defamation.  She had no

contacts with Cremers prior to learning of Smith's e-mail.  She did

not seek media attention regarding her ancestry or the issue of

stolen Nazi art.  In fact, as alleged in her complaint, Plaintiff was

the one unwillingly drawn into the controversy when she was accused

of possessing stolen Nazi art in an internet museum security

newsletter.  She then engaged in the controversy only to clear her

name and, notably, refused Cremers' invitations to join in a dialogue

on the MSN website regarding the controversy.  Thus, Plaintiff is not
a public figure for purposes of her defamation action.

Although Plaintiff is a private figure, that fact does not
end the analysis.  Contrary to what Plaintiff claims, she is not
strictly a private figure who need only establish negligence on the
Defendants' part - and nothing more - in order to prevail.  Plaintiff
is a private figure, but the alleged defamation concerned a matter of
public concern - a fact that Plaintiff readily concedes.  As the
Supreme Court has held, a private person bringing a defamation suit
regarding a matter of public concern must demonstrate falsity, at
least when the defendant is a member of the media.  See Philadelphia
Newspapers, Inc. v. Hepps, 475 U.S. 767, 768-69 (1986).

Though some decisions after Hepps have attempted to confine
its holding to media defendants, neither the Ninth Circuit nor the
California Supreme Court have so held.  In fact, California's
intermediate appellate courts have concluded that a private plaintiff
must prove falsity with respect to even non-media defendants when the
suit involves a matter of public concern.  See Melaleuca, Inc. v.
Clark, 78 Cal. Rptr. 2d 627, 633 (Cal. Ct. App. 1998); Nizam-Aldine
v. City of Oakland, 54 Cal. Rptr. 2d 781, 786-87 (Cal. Ct. App.
1996).  This conclusion is in accord with other jurisdictions.  See,
e.g., In re IBP Confidential Bus. Documents Litigation, 797 F.2d 632,
642 (8th Cir. 1986).  Thus, for present purposes, the Court need not
reach the issue of whether Cremers is a media defendant because it

20

finds no controlling precedent restricting Hepps to media defendants only.  Accordingly, Plaintiff must prove falsity as a part of her defamation case.

In view of the conclusions made above, both parties are hereby ordered to brief the following issue: whether Plaintiff, as a private figure whose suit involves a matter of public concern, has established a prima face case of defamation for purposes of Cal. Civ. Proc. Code § 425.16.  The briefs may not exceed eight (8) pages, and the parties MUST specifically reference their supporting evidence by page and line number.  Plaintiff's brief is to be submitted by June 19, 2001; Defendants' opposition by June 29, 2001; and Plaintiff's reply by July 6, 2001.  After such briefing has been completed, the Court will rule on the Defendant's motion to strike Plaintiff's complaint pursuant to the anti-SLAPP statute.

## V.        CONCLUSION

For all the foregoing reasons, the Defendants' motion to dismiss Plaintiff's complaint for lack of personal jurisdiction and on grounds of forum non-conveniens is hereby DENIED.  The Defendants' motion to strike Plaintiff's complaint under § 425.16 of the California Code of Civil Procedure will be decided after additional briefing has been completed by both parties pursuant to the Court's instructions above.

IT IS SO ORDERED.

DATED: _____6/5/2001_____

_____

STEPHEN V. WILSON

UNITED STATES DISTRICT JUDGE